IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

GARY WAYNE FRANKLIN, JR.                                        PLAINTIFF

V.                                        CIVIL ACTION NO. 1:15-CV-293-MTP

CAROLYN W. COLVIN                                               DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment [14] filed by Plaintiff Gary Wayne Franklin, Jr. ("Plaintiff"). After reviewing the submissions of the parties, the record, and the applicable law, the Court finds that the Motion for Summary Judgment [14] should be denied, and Plaintiff's Complaint [1] should be dismissed.

### I.  BACKGROUND

On November 28, 2012, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning on March 30, 2012, due to spinal canal stenosis, multilevel degenerative disc change, facet joint arthropathy, high blood pressure, diabetes, and cholesterol. (*See* Admin. Record [9] at pp. 141-48.) Plaintiff was laid off from his last job in March 2012 due to restructuring of his department. (*See id.* at pp. 18, 188.)

At the time of filing, Plaintiff was forty-nine years old with a high school diploma and past work as a heavy/construction-equipment mechanic, hydraulic repairer, and cabinetmaker. (*See id.* at pp. 21, 37-38.) His application was denied both initially and upon reconsideration. Plaintiff then requested a hearing before the Administrative Law Judge (the "ALJ"), and a video hearing was held on April 7, 2014, at which Plaintiff was represented by counsel and a vocational expert testified. (*See* Admin. Record [9] at pp. 28-56.)

Employing the five-step sequential analysis described in more detail below, the ALJ ultimately found that Plaintiff was not disabled so as to qualify for benefits.  (*See id*. at pp. 14-23.) Specifically, at step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity.  At step two, the ALJ found that Plaintiff had two severe impairments:  severe musculoskeletal impairments of the spine and diabetes mellitus.  At step three, the ALJ found that these impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*See id.* at pp. 16-17.)

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b), with the limitation that he

> needs a sit/stand alternating option, but can work on the feet standing or walking short distances for one hour at a time and for up to four hours in an eight-hour workday; cannot walk on uneven ground or inclines and should not perform ladder work; needs regular work hours with customary breaks after every two hours of work; cannot perform work with unusual or high work stressors such as work in a dangerous industrial setting, at unprotected heights, or involving commercial driving; cannot do fast-paced production work including work with rigid hourly quotas that must be met; and cannot operate foot controls.

(See *id.* at p. 17.)  The ALJ went on to determine in step four that Plaintiff could not perform any past relevant work, but found in step five that there existed jobs in significant numbers in the national economy that he could perform.  (*See id.* at pp. 21-22.)

Plaintiff appealed the ALJ's decision to the Appeals Council, who denied his request to review.  (*See id.* at p. 5.)  He now seeks judicial review under 42 U.S.C. § 405(g).

## II.  MEDICAL HISTORY

In April 2010, Plaintiff began seeing Dr. Roger H. Reed.  The purpose of his first visit with Dr. Reed was to follow up on his previous diagnoses of hypertension and diabetes with his new

doctor.  (*See* Admin. Report [9] at p. 256.)  During this visit, Plaintiff claimed he had a history of fatigue, headache, worsening vision, chest pain, dyspnea, polyphagia, decreased concentration, tingling and numbness in hands and feet, anxiety with difficulty breathing, rapid heartbeat, depression, bi-polar disorder, and had difficulty sleeping.  (*See id.*)

In December 2010, Plaintiff saw Nurse Practitioner Stephanie L. Harper and complained of pain in his lower back and legs, which was relieved by sitting and made worse by standing, walking, bending, lifting, and rising from a chair.  Plaintiff was prescribed Zanaflex, Ultram, and Mobic for this pain, but he refused testing to discover the cause of the pain.  (*See id.* at pp. 260, 262.)

In March 2011, Plaintiff returned once again complaining of lower back and leg pain, this time seeing Nurse Practitioner Tara L. Sykes.  He reported falling the previous May.  Palpitations of the lumbosacral spine revealed abnormalities, and Plaintiff was referred to a pain clinic for chronic back pain.  (*See id.* at pp. 268, 270.)

In April 2011, MRIs of the lumbar and thoracic spine revealed spinal canal stenosis involving L1/L2 through L4/L5, multilevel degenerative disc changes and facet joint arthropathy contributing to multilevel neural foraminal stenosis, and degenerative disc changes and facet joint arthropathy involving T6/T7 through T10/11.  (*See id.* at pp. 278-80.)

Plaintiff continued to complain of worsening back and leg pain throughout 2011 and into 2012, and was given treatment to combat the pain.  He began seeing Dr. Chykeetra Maltibia in June 2012 as his primary pain management physician.  In her Physical Medical Source Statement dated June 5, 2013, Dr. Maltibia states that Plaintiff has diagnoses of degenerative disc disease of the thoracic and lumbar spine, multilevel disc disease, spinal stenosis of the lumbar spin, osteoarthritis, anxiety, and muscle spasms.  She further noted that Plaintiff's "chronic pain does lead to some

anxiety and other issues which make it hard for him to deal with stressful and demanding situations." (*Id.* at pp. 412, 416.)

On March 2013, Plaintiff was examined by Dr. Tracy Roth, the consultative examiner. Dr. Roth's diagnosis was that Plaintiff suffered from lower back pain with sciatica, with his MRI showing spinal stenosis. (*See* Admin. Record [9] at p. 338.)

In September 2013, Plaintiff underwent surgery involving L3/L4 and L4/L5 bilateral lumbar foraminotomies and central decompression. In November 2013, Plaintiff reported that his pain had improved but was still present. (*See id.* at pp. 431-33, 450, 456.)

### III.  STANDARD OF REVIEW

The Court's review "is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). For evidence to be "substantial" it must be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Greenspan*, 38 F.3d at 236). The evidence must be "more than a mere scintilla" but can be "less than a preponderance." *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)). The Court's task is to "scrutinize[] the record," but it is cautioned against "reweigh[ing] the evidence or substitut[ing] its judgment for the Commissioner's." *Id.* "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971)).

## IV.  DISCUSSION

"A claimant bears the burden of proving that he or she suffers from a disability." *Perez*, 415 F.3d at 461.  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expect to last for a continuous period of not less that 12 months."  42 U.S.C. § 423(d)(1)(A).  Substantial gainful activity means "work activity involving significant physical or mental abilities for pay or profit."  *Perez*, 415 F.3d at 461 (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).  The following five-step sequential analysis is used to evaluate claims of disability:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citations omitted).  The burden of proof is on the Plaintiff for the first four steps, and then shifts to the Commissioner on the fifth step to show that "the claimant can perform other substantial work in the national economy."  *Id.* (citations omitted).  "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding."  *Id.* (quoting *Masterson*, 209 F.3d at 453).

The analysis ends if the Commissioner can determine at any step that the claimant is disabled.  *Id.* (citing 20 C.F.R. § 404.1520(a)).  Before moving from step three to four, the Commissioner determines the claimant's RFC, which is "a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the

5

claimant's record." *Id.* at 461-62 (citing 20 C.R.F. § 404.1545(a)(1)).  The RFC is used in steps four

and five to determine the type of work, if any, the claimant is able to do.  *Id.* at 462.

Plaintiff puts forward four arguments in his Motion for Summary Judgment [14], which the

Court will address in turn.

### A.       The ALJ failed to properly assess Plaintiff's mental impairments at step two.

Plaintiff claims that the ALJ failed to consider his history of anxiety and depression when

determining his severe impairments under step two of the analysis.  At step two of the analysis, the

ALJ found only Plaintiff's severe musculoskeletal impairments of the spine and his diabetes mellitus

to be "established by the medical evidence" and "'severe' within the meaning of the regulations."

(Admin. Record [9] at p. 16.)  Nothing about this finding suggests that the ALJ failed to consider

Plaintiff's history of anxiety and depression; it implies only that the ALJ did not find such mental

impairments to be both supported by the medical evidence and severe within the meaning of the

regulations.  This conclusion is supported by substantial evidence.  Plaintiff has not shown that there

exists in the record a diagnosis of any type of mental illness from a psychiatrist, psychologist, or any

other mental health care provider.  Furthermore, the record shows that  Plaintiff's treating physician

considered Plaintiff's anxiety to be "mild."  (*Id*. at p. 389.)

The Court would also note that, although Plaintiff does self-report a history of bi-polar

disorder, there is no such diagnosis or treatment from a health care provider in the provided medical

evidence.  Even if this diagnosis were accepted, it is clear that Plaintiff was able to continue to work

despite this disorder, as he reported a history of it in April 2010, and did not stop working until

March 2012, when he was laid off due to his department's restructuring.  (*See id*. at pp. 18, 188.)

Moreover, in his application for benefits, Plaintiff claims he did not become disabled to the point

of being unable to work until March 2012, and there is nothing in the medical evidence to demonstrate that his bi-polar disorder worsened at that time. (*See id.* at p. 141.)

Finally, although the ALJ did not find them to be severe impairments, he *did* take Plaintiff's mental impairments into account when determining his RFC, stating that Plaintiff could not "perform work with unusual or high work stressors." (Admin. Record [9] at p. 17.)

Therefore, the Court finds that the ALJ's conclusion that these alleged mental impairments were not severe impairments is supported by the medical record and is not grounds for remand. *See Perez*, 415 F.3d at 461.

### B. The RFC is unsupported by substantial evidence.

Plaintiff makes three arguments against the RFC as determined by the ALJ: (1) that the ALJ failed to give proper weight to the opinion evidence of record; (2) that the ALJ failed to fully and fairly develop the record; and (3) the ALJ failed to properly consider Plaintiff's mental and physical impairments. The Court will address each of these arguments separately.

### 1. The ALJ failed to give proper weight to the opinion evidence.

Plaintiff argues that the ALJ gave too little weight to the opinion of his treating physician, Dr. Maltibia, and too much weight to the opinion of consultative examiner, Dr. Roth. In its limited review of the ALJ's decision, the Court "may not reweigh the evidence or substitute its judgement for the [ALJ's]." *Perez*, 415 F.3d at 461. All the Court must determine is if substantial evidence exists to support the ALJ's findings.

A treating physician's opinion should be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)) (alteration in original). However, "the ALJ

is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Id.* (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).  "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Id.* at 456 (citations omitted).

> In his opinion, the ALJ stated that Dr. Maltibia's opinions were given little weight
>
> because they were made at a time when the claimant was without pain medications and his symptoms had increased.  The same month these opinions were made, the claimant's pain management records note that his symptoms and quality of life significantly improved with restarting pain medications and treatment.  He had back surgery and physical therapy and the objective medical evidence of record shows that the claimant's pain was tolerable with medication and treatment.  Additionally, the claimant remains active and his increased pain complaints are related to times when the claimant engages in more strenuous physical activities.

(Admin. Record [9] at pp. 20-21.)

A perusal of the record shows that the evidence relied on by the ALJ does in fact exist in Plaintiff's medical records,[1] and the Court finds that this evidence is sufficiently substantial so that "a reasonable mind might accept as adequate" to support a conclusion that good cause existed showing that Dr. Maltibia's opinion was not supported by the objective medical evidence.  *Perez*, 415 F.3d at 461 (quoting *Greenspan*, 38 F.3d at 236).  Therefore, Plaintiff's case will not be remanded on this ground.

---

[1]For example, Dr. Maltibia states in her Physical Medical Source Statement in June 2013 that Plaintiff's condition "will not improve without possible surgical intervention."  (Admin. Record [9] at p. 412.)  Plaintiff underwent such surgical intervention in September 2013, and in November 2013, about ten weeks after his surgery, the surgeon, Dr. Terry C. Smith, reported that Plaintiff's condition "continues to improve" and that he "has been able to gradually increase activity and reports that his pain is less severe in general."  (*Id.* at pp. 431-33, 456.)  In fact, his pain had improved so much at that point that Plaintiff "hope[d] to start working on small engines."  (*Id.* at 456.)

8

**2.      The ALJ failed to fully and fairly develop the record.**

Plaintiff argues that the ALJ failed to fully and fairly develop the record because he failed to order a mental consultative examination to fully assess the extent of Plaintiff's mental limitations under step two of his analysis.  Plaintiff bore the burden of proof under step two to establish his mental impairments.  *See Perez*, 415 F.3d at 461.  Plaintiff brought forward no diagnosis of mental impairment from any mental health care provider, and his treating physician stated in her notes that he was only "mildly anxious."  A consultative examination at the government's expense is only required when "the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision."  *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (emphasis in original).  Nothing in the record suggests that such an examination was necessary in this case, and the decision will not be reversed on this argument.

**3.      The ALJ failed to properly consider Plaintiff's mental and physical impairments.**

Under this argument, Plaintiff once again reiterates his belief that the ALJ did not consider his history of anxiety and depression when making his determination on step two of the analysis, and therefore did not consider them when determining Plaintiff's RFC.  As discussed above, *see supra* Part III.A, there is substantial evidence to support the ALJ's findings under step two that Plaintiff had no severe mental impairment.  Furthermore, the ALJ did factor in Plaintiff's mental limtiations in determining his RFC, stating that he could not "perform work with unusual or high work stressors."  (Admin. Record [9] at p. 17.)  Because this argument is premised on an argument already rejected by the Court, it will be rejected here as well.

**C.      The credibility determination is unsupported by substantial evidence.**

Plaintiff contends that the ALJ incorrectly determined that his testimony concerning his symptoms was not credible.  "Subjective complaints of pain must also be corroborated by objective medical evidence."  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citing *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989)) (per curiam).  "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence."  *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

The ALJ rejected Plaintiff's subjective testimony concerning his symptoms because he found that the objective evidence did not support his alleged symptoms.  The ALJ found that the objective evidence showed that Plaintiff's symptoms improved with treatment, and that he remained active with his complaints of pain increasing after strenuous activity.  The ALJ cited multiple reports by Plaintiff to his doctors that claimed his pain was "tolerable" on medication.  Furthermore, the ALJ found that Plaintiff had complained about the same symptoms since 2010, but that he worked until March 2012, when he was laid off due to the restructuring of his employer.  (*See* Admin. Record [9] at pp. 18-20.)  The Court finds that this evidence is substantial so as to provide a basis for the ALJ's determination that Plaintiff's testimony about the severity of his symptoms was not credible.  As such, this determination is given judicial deference and is not be grounds for remand.

**D.      The step five determination is unsupported by substantial evidence.**

Plaintiff's only argument under step five is that the ALJ relied on incomplete testimony of the vocational expert because the ALJ's conclusions about Plaintiff's limitations at previous steps were incorrect.  Specifically, Plaintiff argues that the ALJ did not consider his history of mental illness when determining the severe impairments under which he was suffering.  Because the vocational expert based his opinion on the impairments found by the Court, Plaintiff argues that his

10

opinion must be also flawed.  However, as discussed previously, the Court has found that the ALJ properly considered the evidence before him and came to conclusions concerning Plaintiff's severe impairments which are supported by substantial evidence in the record.  *See supra*, Part IV.A.  The vocational expert was correct, then, to base his opinion on the Court-determined limitations of Plaintiff.

"[T]he ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so."  *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).  The vocational expert in this case was asked about jobs in the national economy which Plaintiff could perform, given the ALJ's determination of his RFC to be light work with the limitation that he

> needs a sit/stand alternating option, but can work on the feet standing or walking short distances for one hour at a time and for up to four hours in an eight-hour workday; cannot walk on uneven ground or inclines and should not perform ladder work; needs regular work hours with customary breaks after every two hours of work; cannot perform work with unusual or high work stressors such as work in a dangerous industrial setting, at unprotected heights, or involving commercial driving; cannot do fast-paced production work including work with rigid hourly quotas that must be met; and cannot operate foot controls.

(Admin. Record [9] at pp. 17, 22-23.)  The Court has already found that this RFC determination is supported by substantial evidence in the record.  *See supra* Part IV.B.  The ALJ was correct to rely on the vocational expert's testimony which took this determination into account.  *See Carey*, 230 F.3d at 146.  The Court finds that the ALJ's determination under step five is supported by substantial evidence.  Therefore, the ALJ's decision will not be remanded on these grounds.

Because the Court has determined that the ALJ applied the proper legal standard and because each of his determinations in the five-step analysis was supported by substantial evidence, the Court finds no grounds for a reversal of the ALJ's decision.  *See Perez*, 415 F.3d at 461 (citing *Greenspan*,

11

38 F.3d at 236).  Plaintiff's Motion for Summary Judgment [14] will therefore be **denied**, and the ALJ's decision will be **affirmed**.  Plaintiff's Complaint [1] will be **dismissed with prejudice**.

## V.  CONCLUSION

IT IS, THEREFORE, ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment [14] is **denied**.  The decision of the ALJ is **affirmed**, and the Plaintiff's Complaint [1] is **dismissed with prejudice**.  A separate judgment will be entered herein in accordance with this Opinion and Order as required by Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 6th day of October, 2016.

s/ Michael T. Parker
United States Magistrate Judge